Good morning. May it please the Court, Elizabeth Bentley for the petitioner. The IJ granted petitioner two alternative forms of relief based on extensive factual findings regarding the exceptional hardship and likely torture a petitioner would face if removed to Somalia. Reviewing that decision, the BIA overreached its authority in three material ways, each of which independently calls for a remand. First, it failed to apply the clear error standard of review and impermissibly engaged in fact-finding. Second, it improperly faulted the IJ's legal analysis under the Convention Against Torture, effectively holding petitioner to a higher burden of proof than required. And third, it failed to remand the case to remedy any insufficient fact-finding by the IJ. These errors do not only deprive petitioner of a fair review of his claims when his most fundamental rights are at stake, they more broadly undermine this Court's precedent in Waldron v. Holder and more broadly undermine the integrity of the Board's adjudication of removal orders. I'd like to turn first to the issue of the standard of review. Governing regulations and this Court's precedent require that the Board of Immigration Appeals review the immigration judge's factual findings for clear error, and they prohibit the Board from engaging in fact-finding in the first instance. Clear error review means that an IJ's findings cannot be overturned simply because the Board would have weighed the evidence differently or decided the facts differently had it been the fact-finder. That's this Court's holding in Waldron, as well as Garcia-Mata and the U.S. Supreme Court's decision in Anderson on clear error review. If the Board is going to identify a particular finding as clearly erroneous, it must squarely address the evidence on which the IJ based its finding and explain why that is clearly erroneous. And the Board violated these tenets with respect to both grants of relief in the form of the waiver or the Convention Against Torture. And turning first to the Convention Against Torture, where the fact-finding was quite extensive. The Board made a number of fact-findings in the first instance regarding, for example, whether or not Petitioner could safely relocate to Mogadishu. Those findings either directly conflicted or were consistent with the IJ's findings, and yet the Board did not explain how those, how the findings it made based on the record rendered the IJ's findings implausible or illogical, which is what is required to have clear error under Anderson. If neither account is illogical or implausible, if the IJ's account is not illogical or implausible, there can be no clear error. For example, the Board of Immigration Appeals found that the government has effective control over Mogadishu and yet didn't address the finding by the IJ that al-Shabaab poses a particular threat to minority groups, even in areas under government control. The Board's finding does not establish that the IJ's finding was clearly wrong. With respect to, I can continue to give other examples if it would be helpful with respect to the Convention Against Torture, but to turn to the waiver of inadmissibility, the Board made, did not expressly state that the IJ had clearly erred. In fact, it stated the opposite, that the immigration judge's findings with respect to the waiver were not clearly erroneous, and yet it mischaracterized those findings and effectively made findings of its own with respect to the possibility that the petitioner would experience extreme hardship. Counsel, let's talk about that. So the Board clearly misstated the IJ's finding regarding unusual hardship. There's no question about that. But given the Board's ability to weigh the factual findings differently, does that require remand? Well, so to be clear, the waiver is an issue of discretion, the ultimate question of whether to grant it. But as this court held in Waldron v. Holder, which was also a discretionary decision, whether the underlying facts that the Board may consider must still be found by the immigration judge, and those are reviewed for clear error. So they have to go through the process of looking at the IJ's findings, and only based on those findings may it make its ultimate discretionary decision. So here, the Board mischaracterized the IJ's findings and relied on findings that were in fact different than what the IJ had found, which does require a remand here so that the Board can correctly apply clear error review to the IJ's findings and then make its discretionary decision. Would you compare this case with the GEMMA v. Barr case? Yes. So that is with respect to the Convention Against Torture Claim and whether the court, the IJ, applied the correct legal analysis. This case is distinct from the GEMMA in two material ways. First, it's not a case that relied on a chain of hypothetical future events or a series of suppositions, as the IJ said, or excuse me, as the Board said. The immigration judge here made a number of distinct findings that together reached the threshold of more than the IJ. She didn't rely on any specific chain. Rather, she found that based on, and these are the factors that the regulations require judges consider in determining whether someone is more likely than not to be tortured, she looked at past torture, made extensive findings about the torture that he'd experienced prior to leaving Somalia. She made a number of findings with respect to his clan and the hardship or persecution they experienced both at the hands of the government and militias as well as at the hands of the al-Shabaab terrorist group over which the government doesn't have control. And she also made a number of, the third factor in the regulations is general human rights abuses in the country and made findings to that effect. But they did make a, the BIA did say that the IJ was clearly wrong, clearly erred in these areas because it was not looking at matters specific to the circumstance involving the petitioner. The Board stated that one particular factual conclusion, whether or not the Ashraf minority clan are disproportionately subject to torture, stated that that factual conclusion was clearly erroneous. Our first argument is that they, in making that decision, misapplied a clear review and in fact did not establish that that fact was clearly erroneous. And you don't just look to whether they said it was, you look to their analysis and whether they adequately explained why it was clearly erroneous. But the, even taking that point to return to the issue of the standard of review, the judge here, the point is that the judge did not rely on the hypotheticals, especially when you look to what the BIA meant when it said that series of hypotheticals, it references the government's brief, which laid out precisely the chain that they were thinking of, which is that, and if you look at that chain, they are specific facts that the IJ found and that the Board did not find to be clearly erroneous or they mischaracterized the IJ's findings. For example, that petitioner, the first hypothetical chain petitioner is Ashraf. There's no dispute in the record between the BIA or the IJ that that is true, a present fact. That the Ashraf are treated like a Benadiri, that is a finding of fact that is also accepted by both the Board and the immigration judge. That the Benadiri minority, same thing. That petitioner will be treated like a Benadiri. Now that is one possibility that the IJ considered, but this is the point about how she didn't rely on a series of linked chains. It is true that Ashraf who are treated like Benadiri may experience, that he may be treated like a Benadiri if he resides with the Ashraf in Mogadishu. However, she didn't rely on that particular fact as the only way that he can establish, more likely than not. She made findings with respect to the Ashraf being subject to abuse at the hands of the Al-Shabaab as well. So those are the differentiating pieces where the chain, as soon as that chain breaks, that's not a representative finding here. And makes it distinct from the case in Jima where the court, excuse me, the Board identified the chain as relying on general country conditions. There hadn't been an experience of past torture by that petitioner. And my understanding of the facts of that case was that the IJ had not made findings specific about his clan as to whether or not they may be subject to torture as well. In any event, to the extent that the, on any of these points, the Board had found the IJ's findings to be lacking in any way. Our third argument is that the remedy was not to supplant its own but rather remand to the Immigration Court to further develop any insufficient fact-finding. To the extent that the court views the Board's decision as having found insufficient fact-finding with respect to a particularized likelihood of torture, that is something that the Board should have remanded to the IJ to consider in the first instance. Another piece of, just to be clear about the Convention Against Torture, our understanding of what the IJ did here was not, again, not rely on a chain of hypotheticals but rather add together a cumulative understanding of present facts that reach the more likely than not threshold. And in that event, you don't need each individual event to be 50 percent as you would in a chain where rather the cumulative effect of the different findings would reach that threshold. If there are no further questions, I'll reserve the remainder of my time for rebuttal. Thank you, Ms. Bentley. Ms. Workman. May it please the Court, Claire Workman for the Attorney General. Given Petitioner's convictions for sexual assaults against two minor girls, this Court's review of the Board's decision is limited to claims of legal or constitutional error. Petitioner intends to invoke this Court's jurisdiction by alleging that the Board misapplied its standards of review and engaged in improper fact-finding, but these claims are meritless. Ultimately, Petitioner conflates fact-finding with the Board's de novo reweighing of the equities for a Section 209C waiver, which is a discretionary determination and ultimately that is unreviewable by this Court. Also, Petitioner merely disagrees with the Board's decision denying him deferral of removal under the Convention Against Torture without showing that the Board made any legal errors. The Board properly reversed the immigration judge's factual findings for clear error and then accordingly concluded that he had failed to meet his burden of proving that it was more likely than not that he would face an individualized risk of torture. With respect to the 209C waiver denial... I had a question about, which is, I don't see the IJ, and maybe this is your point, I don't see the IJ making a specific more likely than not that he would be tortured finding anywhere. There's a lot of individual facts that the IJ talks about regarding the clans and the government, etc., but I don't see a more likely than not specific finding anywhere, actually. Am I wrong about that? I don't think so, Your Honor, because the IJ relies mainly on a finding, as noted in the Board's decision, that members of the Ashraf clan are disproportionately subject to torture in Somalia, and that is the main finding that the Board finds clearly erroneous and then goes about looking at the evidence and showing, with sufficient justification and cogent reasoning, why that falls apart and that it's clearly wrong. Why, then, isn't the appropriate disposition, rather than essentially affirming what the Board did or denying the petition for review, why shouldn't we send it back to the IJ for a specific finding on whether, as applied to him, it's more likely than not that he would be tortured? Because, Your Honor, that is a finding that, when it's before the Board, is reviewed de novo. It's a finding, it's considered the application of a law to facts, and so under the Board's standard of review, that's reviewed de novo until the Board determined on de novo review, after finding the immigration judge's factual findings clearly erroneous, that ultimately he did not meet his burden of proof. And the Board, it's very clear that the Board correctly held him to the more likely than not burden of proof in the last two paragraphs on page 8 of the record, which is page 6 of the Board's decision, at least four times refers to the more likely than not standard. And it's based largely on, ultimately, he bore the burden of proof of establishing his individualized risk, and he failed to meet that. Let me ask you this. I have a note here, and it's been a few days since I've read all the materials on this case, but I have a note here that says that under GEMA, which was referenced earlier, that the more likely than not that he would be tortured is actually a factual finding. Is that wrong under GEMA? Is my note wrong, in other words? So, when this court is reviewing a CAT determination where the criminal alien review bar does not apply, where this court can review the merits, it, of course, reviews for substantial evidence because it's considered a factual issue before the court. And, but before the Board, I'm sorry, I'm looking in GEMA to try to find where, what you're referring to, Your Honor. Well, and I can review it later. I just was wondering if you had a quick answer to that question. I certainly don't want to waste your oral argument time. No, that's okay. So, but this case is very similar to GEMA, and Petitioner's attempt to distinguish it fails because it's important the immigration judge did not make a finding of whether Petitioner had experienced past torture. Petitioner indicates that the immigration judge did that. In fact, in their opening brief, Petitioner says... It's not disputed, is it, that he was shot? Yes, Your Honor, it's not disputed. Several times. Yes, Your Honor. He, it's not disputed that he experienced severe harm, Your Honor, and whether that harm, though, rises to the level of persecution and even further to the level of torture is something that the agency has to decide in the first instance. Weren't members of his family targeted as well, and essentially he was the last of the family to get out of the country? Well, Your Honor, yes, his parents were killed, his sisters, I believe, were killed, and his brothers were not. I think they, he doesn't know where they are, Your Honor, but they, for, it appears for various reasons and by different private actors, and though the, the board certainly took that into consideration, and... And Somalia really is kind of a special case since, for so long there really was no functioning government. Yes, Your Honor, there, since 2012 there is a government now in place, there are, there's minority tribe representation in that government, as I believe one of petitioner's witnesses testified about as well, and there's evidence in the record as to that. But with... With respect to the, the CAD deferral and the board noting that there was a string of assumptions made by the immigration judge, it doesn't matter whether there were independent findings or whether, if one of those findings, they're all connected, and if one of them falls apart, as it did here, then the whole, the whole chain or group or everything supporting petitioner's claim fails. And that's what happened here, because the immigration judge assumed that petitioner would be treated like a Benadiri. There is nothing in the record that petitioner considers himself Benadiri or that he would align with them, and that actually also conflicts with other factual findings that the immigration judge made, that Ashraf traditionally aligned with other tribes as well, which is indicated in the record, some of which, particularly the Ra Hanwen, has been forming defensive forces since the 1990s. So, in other words, the finding that the Benadiri are part of this group that is unprotected does not apply to petitioner, or certainly does not, more likely than not, show that petitioner would be subjected to torture in Somalia. And with respect to al-Shabaab, there was no finding that al-Shabaab has mistreated petitioner in the past. And with, the board noted the immigration judge's finding that al-Shabaab targets the Ashraf for ideological reasons, but the board noted the, that this was, this is a clearly erroneous finding because the record evidence, the more recent record evidence, particularly from 2017 in the record, shows that al-Shabaab has been forced to retreat to the countryside by, in large part, and has lost its power over Mogadishu, and their joint efforts of the African Union, the Somali army, and U.S. forces to force al-Shabaab to give up much of their territory. So the board is focusing on the ability of al-Shabaab to harm petitioner. And... Counsel, I'd like to go back to the waiver of inadmissibility, if we could, and the issue of impermissible fact-finding. Yes, Your Honor. Ms. Bentley asserts that the board engaged in impermissible fact-finding, and one thing that stands out to me is the issue of the minimization of culpability of Mr. Kassim. Is there anywhere in the record where the IJ made a fact-finding on that issue? No, Your Honor, but the... But the board did. The board did not make a factual finding, Your Honor. The board is allowed to rely on evidence in the record, as this court has repeatedly recognized in many presidential decisions, that... So the board... And also, it's important to point out that one factor in the discretionary analysis, which comes from a case that the board cited in its decision here, Mendez-Morales, goes through many of the discretionary factors that can be considered in balancing, weighing the equities for a discretionary waiver. And one of them is rehabilitation, if a criminal record exists. And that's exactly what the board was doing here. It was taking into consideration that the... In testimony, Petitioner denied that his offenses involved force and that they were not consensual. Well, he denied that the fondling ever happened, and he denied that the sexual penetration with the other minor was consensual. And so he's basically denying the criminal conduct, which, of course, the immigration judge couldn't go beyond the record of conviction. So that was well established, that it was not consensual, and that it involved minors. The underlying facts are established, but is the conclusion that he minimized his culpability, isn't that a factual finding? It's not, Your Honor, because it's... It comes from the record that... And in this court's recent decision in Euritio Robles, this court stated that... And I'm reading from page 422. Evaluating the same record, but placing greater weight on evidence not discussed in the IJ's decision. The BIA concluded, Euritio, I'm quoting, has not shown that he has been rehabilitated from his serious history of driving under the influence of alcohol. So in that case, and in others, this court has acknowledged that the board can rely on factual findings by the immigration judge. And with respect to the hardship issue, it's important to note that on page 4 of the record, which is page 2 of the board's decision, the board says, assuming that Mr. Kassim has demonstrated his eligibility for a waiver under section 209C, that assumes that the board is... I mean, that is the board recognizing that it accepts the exceptional and extremely unusual hardship finding that the immigration judge made. What the board has been doing with that is in the discretionary analysis, weighing that Mendes Morales, again on page 5 of the record, page 3 of the board's decision. So ultimately, that is within the clear authority of the board to re-weigh all of the equities and balance them and come out on de novo review, which it did here, with a determination that is different from the board, from the immigration judges. Well, clearly the board had a different view of petitioner's culpability in the criminal activity. The IJ seemed to believe the petitioner that he didn't know the age of the girls and was basically misled by his companion. But it seems the board's view of it took a very different view of the petitioner's culpability. Yes, your honor, the board is perfectly allowed to do that on a discretionary balancing of factors and determining whether he has rehabilitated himself and taken full responsibility for his crimes. I see that my time is up. If the court has no further questions, respondent asks that the court dismiss or deny the petition for review. Thank you, Ms. Workman. Ms. Bentley, your rebuttal. I'd like to address three brief points. First, Judge Gross, with respect to the board's consideration of whether or not the petitioner minimized his culpability, that does amount to a new factual finding. And the board cannot make those independent fact findings as a part of its discretionary review, as the government has said. None of the cases that they cite involve a situation like this, where the BIA actually looked at evidence in the record in the first instance and solely relied on that evidence in making its discretionary review. The cases either expressly state they based the findings on the IJ's factual findings, or they were affirming the IJ's decision, so looking at the record and finding support for the IJ's point, or they involved a prior regulation where only de novo review applied. They didn't apply clear error. So I wanted to make sure that point is clear. The case Arusha doesn't – I don't read that to the contrary. It focused on one particular finding and found that the board did not reject the IJ's finding and, in fact, had weighed that as a positive factor. And if you were to read Arusha differently, it would directly conflict with this court's precedent in Waldron and Ramirez-Payrot in Nabowala. So I urge the court to review those cases again. Judge Strauss, with respect to your question about whether a predictive finding of fact, and specifically whether someone is more likely than not to be tortured, is a factual finding that is under the board's precedential decision in matter of ZZO. So ultimately, whether or not the immigration judge's conclusion that he is more likely than not to be tortured, that is a factual finding that must be shown to be clearly erroneous. So the fact that we don't have any individualized factual finding here, at least I couldn't find one, there are some findings about in generalities. In your view, would that require a remand back to the immigration judge? Certainly, at a minimum, yes. You can read the way that I read the IJ's decision is that there are implicit findings, and the court can, the IJ can make, and the board has to review implicit findings for clear error as well. So I read an implicit finding as a necessary finding of hers in order to reach the conclusion. However, to the extent that that was not clear, then certainly that would be a basis to remand to the board to have the IJ engage in further specific fact finding on that question. As a third, more general point, the government walks through, again, a number of different findings with respect to the Convention Against Torture claim. Again, not engaging in what we, the way that we read Waldron is that you cannot just cite other evidence in the record and reach a new factual conclusion. Rather, you have to explain why the IJ's conclusions were wrong. The BIA didn't do that, and the debate that we're having about these factual questions is the precise reason why the clear error standard of review is there in the first place to keep this type of conversation out of this court. The clear error standard of review is intended to have the immigration judge in the first instance review the credibility of the witnesses, review all the factual findings, both because the judge is closer to the evidence, but also as a matter of efficiency. And that is why the clear error review is so exacting. And in this case, the board's findings to the contrary expose that error very clearly here. So to the extent that there are no further questions, we request that the panel remand the case back to the board for further proceedings. Thank you, Ms. Frazier. Thank you also, Ms. Workman. The court appreciates the arguments you've provided to us this morning. We'll take your case under advisement. You may be excused. Madam Clerk, would you call case number three for the morning? Jennifer Paskert versus Brent Burns et al. Thank you.